Plaintiff also argues that immunity is lost because the judges lacked subject matter jurisdiction over the fees motion. That is not the case. The fees action was commenced before the final entry of judgment in the divorce proceeding. The attempt to seek fees at the conclusion of the merits of the case makes this case similar to many, if not most, of the cases that proceed to trial in Minnesota every year.

**C. The Court Lacks Jurisdiction Over the State of Minnesota**

This Court lacks jurisdiction over Plaintiff's claims against the State of Minnesota. The Eleventh Amendment to the United States Constitution provides that federal courts lack subject matter jurisdiction over any person's claim against an unconsenting state. See Seminole Tribe v. Florida, 517 U.S. 44, 54, 116 S.Ct. 1114, 1122 (1996); Hans v. Louisiana, 134 U.S. 1, 10 S.Ct. 504 (1890). This bar applies regardless of the nature of the relief sought. Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 99, 104 S.Ct. 900, 907 (1984). The only exceptions to this bar are where the state has consented to suit or where Congress has abrogated the state's immunity by some express statutory provision. Alabama v. Pugh, 438 U.S. 781, 782, 98 S.Ct. 3057, 3057 (1978); Seminole, 517 U.S. at 55, 116 S.Ct. at 1123.

In this case, the State of Minnesota has not consented to suit and Congress has not expressly abrogated the State's immunity to any of Plaintiff's alleged claims. While Plaintiff argues that the Minnesota Tort Claims Act works to waive Eleventh Amendment immunity, the Tort Claims Act has not been interpreted to mean that the State of Minnesota has consented to be sued in federal court. See Minn. Stat. § 3.736; Hoeffner v. University of Minnesota, 948 F.Supp. 1380, 1391 (D.Minn. 1996)(in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to

suit in federal court)(citing Port Authority Trans-Hudson Corp. v. Feeney, 495 U.S. 299, 301, 110 S.Ct. 1868, 1873 (1990)); DeGidio v. Pung, 612 F.Supp. 1383, 1389 (D.Minn. 1985). Accordingly, the State of Minnesota's Motion to Dismiss must be granted.

**D. Dakota County Is Not Liable**

Defendant Dakota County moves for dismissal on two grounds: first, that Minnesota District Court judges are employees of the State of Minnesota and second, because Dakota County is entitled to statutory immunity under Minn. Stat. § 466.03 (1998), which bars claims against political subdivisions for the damages Plaintiff seeks. Dakota County is correct on its first assertion, and the Court need not consider the second claim.

If Dakota County is to be found liable for the actions of Judges Metzen and Sutherland, agency law requires that the judges were acting on behalf of or in place of Dakota County when the actions alleged in the Complaint took place. Jurek v. Thompson, 308 Minn. 191, 241 N.W.2d 788 (1976). However, the Minnesota Constitution clearly establishes that the judiciary is independent of the legislative and executive branches. Minn. Const. Art. III, § 1. Judicial power is vested by the Minnesota Constitution "in a supreme court, a court of appeals...a district court and such other courts, judicial officers and commissioners with jurisdiction inferior to the district court as the legislature may establish." Minn. Const. Art. VI, § 1. District courts, therefore, derive their power from the judicial branch.

In contrast, counties in Minnesota are creations of the state Legislature. Minn. Const. Art. XII, § 3; Minn. Stat. § 2.01 (1998)(schedule of counties and legislative acts creating each county). Counties may only exercise the powers that are specifically granted to them by the Legislature, and exist only as agencies of the State for conducting affairs of government.

Minnesota State Bd. of Health by Lawson v. City of Brainerd, 308 Minn. 24, 41, 241 N.W.2d 624, 634 (1976), quoting Williams v. Eggleston, 170 U.S. 304, 310, 18 S.Ct. 617, 619 (1898).

If Dakota County and the Defendant Judges derive their power from different branches of the State government, the Defendant Judges cannot be agents of the County. The adjudication of Plaintiff's fee and sanctions disputes, the underlying divorce case involving Plaintiff, and the administration of judicial records are all judicial functions reserved to the state district court. See LeRoy v. Special Independent School Dist. No. 1 of Minneapolis, 285 Minn. 236, 241, 172 N.W.2d 764, 769 (1969)(functions are judicial if they are those that courts have historically been accustomed to perform).

Plaintiff also asserts that liability may be imputed to Dakota County because of the action of the Dakota County clerk in back-dating Judge Sutherland's Order. Accepting for the purposes of argument that the back-dating clerk was a County employee, Plaintiff can still not overcome the fact that, by requesting that the original Order be amended, she has waived her right to challenge the clerk's action.

Accordingly, Dakota County cannot be liable for the actions of the Defendant Judges. The claims against it must be dismissed.

## E. The Claims Against the Remaining Defendants Fail on Their Merits

### 1. "Shirley Reider" and "Shirley Reider, Attorney at Law," Are the Same Entity

In her response to Defendant Attorneys' Motion to Dismiss and/or for Summary Judgment, Plaintiff alleges that "Shirley A. Reider, individually," and "Shirley A. Reider, attorney at law, a sole proprietorship" are separate parties to this action. As the individual

Shirley A. Reider was the only Reider entity included in the Motion to Dismiss, Plaintiff further alleges that the Reider sole proprietorship must remain in the case regardless of the outcome of this Motion.

Contrary to Plaintiff's argument, for the purposes of this Motion, the individual Shirley A Reider and the Reider sole proprietorship are one and the same. See, e.g., Bartlett v. Heibl, 128 F.3d 497, 499-500 (7th Cir. 1997)(sole proprietorship is not a suable entity separate from the sole proprietor).[2] Therefore, the ruling of this Court as to Shirley Reider shall apply equally to "Shirley A. Reider, attorney at law, a sole proprietorship."

**2. Plaintiff Cannot Prevail on Her 42 U.S.C. § 1983 Claim Against Defendant Attorneys and Defendant Galvin**

To prevail on a § 1983 claim, Plaintiff must allege that: (1) the conduct complained of was committed by a person acting under the color of state law; and (2) that this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. Dubose v. Kelly, 187 F.3d 999, 1002 (8th Cir. 1999); Parratt v. Taylor, 451 U.S. 527, 535, 101 S.Ct. 1908 (1981). Although attorneys representing private litigants are generally not state actors, they may be considered state actors for purposes of § 1983 if shown to be engaged in a "corrupt conspiracy" with a state actor such as a judge. Dubose, 187 F.3d at 1003; Dennis v. Sparks, 449 U.S. 24, 27, 101 S.Ct. 183, 186 (1980).

---

[2]The parties also raise the issue of whether Ferdinand Peters and Paul Jeddeloh and the limited liability partnership that they operate with Skelly may be liable either for their own actions or the alleged misconduct of Skelly. While it appears at first impression that Peters and Jeddeloh may not be sued in their individual capacities for Skelly's misconduct, as the outcome of this Motion will reveal, the issue is in all ways moot.

In pleading a claim of conspiracy under 42 U.S.C. § 1983, the Complaint must set forth facts which support a finding that a conspiracy existed. Warren v. Fischl, 33 F.Supp.2d 171 (E.D.N.Y. 1999)("pro se complaints containing only conclusory, vague, or general allegations of a conspiracy to deprive a person of constitutional rights are subject to dismissal"); Ivey v. Board of Regents of the University of Alaska, 673 F.2d 266, 268 (9th Cir. 1982)("vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss").

The record before the Court does not demonstrate that a conspiracy existed. It does establish that there was a great deal of animosity between the parties, brought on in large part by Plaintiff's perception that she was being abused by Defendants and belief that Skelly and Robert Galvin were concealing evidence, and Defendants' perception that Plaintiff was squandering judicial resources and billing unnecessary time when the Galvin divorce could have been resolved short of trial. Dissatisfaction between lawyers, however, is not indicative of a conspiracy between some of the lawyers to harm opposing counsel. Nothing in the record before this Court suggests that Defendants' actions were in any way conspiratorial.

As previously discussed, Judges Sutherland and Metzen acted within their capacities as judges. None of their rulings suggest a conspiracy against Plaintiff. While some of Skelly's actions raise the possibility that he was motivated by frustration with Plaintiff, particularly the unusual inclusion of a provision in the Galvin divorce decree permitting Skelly to seek fees from her, none of his actions suggest a conspiracy. As for the remaining Defendants, all of their actions are in some way subsidiary to Skelly's. Nothing in their actions suggests a conspiracy.

Accordingly, the 42 U.S.C. § 1983 claim must be dismissed.

**3. Plaintiff's 42 U.S.C. § 1985(3) Must Be Dismissed**

Plaintiff also alleges a claim under 42 U.S.C. § 1985(3). A § 1985 claimant must plead specific factual allegations of a conspiracy that intends to deprive "either directly or indirectly, any person...of the equal protection of the laws, or of equal privileges and immunities under the laws." 42 U.S.C. § 1985(3); Amundsen v. Chicago Park Dist., 218 F.3d 712 (7th Cir. 2000)(claims of conspiracy under 42 U.S.C. § 1985 "containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss"); Storck v. Suffolk County Department of Social Services, 62 F.Supp.2d 927 (E.D.N.Y. 1999)("like conspiracy claims asserted under § 1983, conspiracy claims under § 1985 must also contain specific factual allegations and a complaint consisting of nothing more than conclusory or vague allegations of conspiracy is insufficient to survive a motion to dismiss).

The same paucity of evidence that dooms Plaintiff § 1983 is a fatal impediment to her § 1985 claim. Accordingly, this claim must be dismissed as well.

**4. Plaintiff's Abuse of Process Claim Must Be Dismissed**

Plaintiff alleges that the attempt by Defendant Attorneys and Defendant Galvin to get fees from her constitutes abuse of process. This claim must fail because at least one of its essential elements is not satisfied by the facts before the Court. In Minnesota, a claimant alleging abuse of process must demonstrate: (1) the existence of an ulterior purpose; and (2) the act of using the process to accomplish a result not within the scope of the proceeding in which it was issued, whether or not such result might otherwise be lawfully obtained. Pow-Bel Constr. Corp. v. Gondek, 192 N.W.2d 812, 814 (Minn. 1971); Hoppe v. Klapperich, 28 N.W.2d 780, 786 (Minn. 1947). The ulterior purpose must be the actor's primary goal, and must benefit him or her in

some way. See Velez v. City of New London, 903 F.Supp. 286, 291 (D.Conn. 1995)(citing Restatement (Second) of Torts § 682 (comment b); Minnesota Corn Processors, Inc. v. McCormick, 2000 W.L. 948659 (E.D. Pa.)("the gravamen of abuse of process is the perversion of the particular legal process for purpose of benefit to the defendant, which is not an authorized goal of the procedure").

The particular legal process in question in this case is an action for an award of attorney's fees against Plaintiff. The Complaint argues that the purpose of the action was not to actually obtain fees from Plaintiff, but rather to destroy her career. The record is completely lacking in evidence, however, that destroying Plaintiff's career was the true purpose of the fees proceeding. While Plaintiff cites the fact that Defendant Attorneys and Defendant Galvin ceased their attempt to recover fees short of actually recovering them as evidence of abuse of process, there is no logical connection between the dismissal and the claim.

Accordingly, the fees action cannot succeed, and must be dismissed.

**5. Plaintiff's Malicious Prosecution Claim Must Be Dismissed**

Plaintiff also asserts a claim for Malicious Prosecution. (Complaint, ¶ 139). To state a claim for malicious prosecution in Minnesota, a plaintiff must allege that: (1) the action was brought without probable cause or reasonable belief that the party would ultimately prevail on the merits; (2) the action was instituted and prosecuted with malicious intent; and (3) the action was terminated in favor of the malicious prosecution plaintiff. Hoppe, 28 N.W.2d 780, 786; Williamson v. Guentzel, 584 N.W.2d 20, 23 (Minn. Ct. App. 1998); Kellar v. Von Holtum, 568 N.W.2d 186, 192 (Minn. Ct. App. 1997).

The record contains no evidence that Defendants lacked a reasonable belief that they would prevail on their fees motion, particularly in light of Judge Sutherland's recommendation to Deborah Galvin that she arbitrate her fees with Loraas. Furthermore, the record contains no evidence that the action was instituted or prosecuted with malicious intent.

Accordingly, Plaintiff cannot prevail on her malicious prosecution claim, and it must be dismissed.

**6. Plaintiff's Tortious Interference with Contract Claim Must Be Dismissed**

Plaintiff also alleges that Skelly tortiously interfered with the contract between Plaintiff and Deborah Galvin. (Complaint, ¶ 145). To establish a prima facie case of tortious interference with a contractual relationship, a plaintiff must show: (1) the existence of a contract; (2) the alleged wrongdoer's knowledge of the contract; (3) intentional procurement of its breach; (4) without justification; and (5) damages. Kjesbo v. Ricks, 517 N.W.2d 585, 588 (Minn. 1994); Furley Sales and Assoc., Inc., v. North American Automotive Warehouse, Inc., 325 N.W.2d 20, 25 (Minn. 1982).

The most obvious problem with Plaintiff's tortious interference claim is that Plaintiff has absolutely no evidence that Skelly intentionally procured the breach of the contract between Plaintiff and Deborah Galvin. The undisputed evidence of record is that Deborah Galvin initiated settlement discussions with Robert Galvin outside the presence of her lawyer and that Skelly refused to have any conversations with her without Loraas present. While there is evidence that Skelly spoke to Deborah Galvin in person the next day at trial, Deborah Galvin had already discharged Loraas at that point.

Accordingly, Plaintiff's allegation of tortious interference with contract should be dismissed.

**7. Plaintiff's Fraud Claim Must Be Dismissed**

Plaintiff also alleges that Skelly defrauded her by claiming on the record that Defendant Galvin would pay all of his own attorney's fees and then prepared a Judgment and Decree that permitted Galvin to seek fees from Loraas. (Complaint, ¶¶ 154, 155). Prima facie claims of fraud in Minnesota are made by showing that: (1) there was a representation; (2) the representation was false; (3) the representation had to do with a past or present fact; (4) the fact was material; (5) the fact was susceptible of knowledge; (6) the representor knew the represented fact to be false, or, in the alternative, asserted it as his or her own knowledge without knowing whether it was true or false; (7) the representor intended to have the other person induced to act or justified in acting upon it; (8) that person was so induced to act or so justified in acting; (9) that person's action was in reliance upon the representation; (10) that person suffered damage; and (11) the damage was attributable to the misrepresentation. Weise v. Red Owl Stores, Inc., 286 Minn. 199, 202-03, 175 N.W.2d 184, 187 (1970).

This claim fails because, as discussed in the facts section of this Report and Recommendation, the Judgment and Decree contains the same terms that Skelly presented to the court at the divorce trial. Even if that was not the case, Loraas has not demonstrated reliance upon Skelly's representation or damages. Accordingly, the claim must be dismissed.

**8. Plaintiff's Claims Under Minn. Stat. § 481.07 and § 481.071 Must Be Dismissed**

Plaintiff also alleges that Skelly is liable for treble damages under Minn. Stat. § 481.07 and 481.071. Minn. Stat. § 481.07 provides that:

> Any attorney who, with the intent to deceive a court or a party to an action or judicial proceeding, is guilty of or who consents to any deceit or collusion, shall be guilty of a misdemeanor; and, in addition, to the punishment prescribed therefor, the attorney shall be liable to the party injured in treble damages.

Minn. Stat. § 481.071 similarly provides that:

> Every attorney or counselor at law who shall be guilty of any deceit or collusion, or shall consent thereto, with the intent to deceive the court or any party, or who shall delay the attorney's client's suit with a view to the attorney's own gain, shall be guilty of a misdemeanor and, in addition to the punishment prescribed by law therefore, shall forfeit to the party injured treble damages, to be recovered in a civil action.

To recover under either of these statutes, Plaintiff must establish actual or intentional fraud. Gilchrist v. Perl, 387 N.W.2d 412, 419 (Minn. 1986)(Minn. Stat. §§ 481.07 and 481.071 "apply to intentional or actual fraud or deceit"). As discussed previously, Plaintiff has failed to establish fraud. Accordingly, her claims under these statutes must fail.

**9. Plaintiff's Claim for Intentional Infliction of Emotional Distress Must Be Dismissed**

Loraas also claims that all Defendants intentionally inflicted emotional distress on her. The elements of the tort of intentional infliction of emotional distress are: (1) conduct that is extreme and outrageous; (2) committed intentionally or recklessly; (3) causing emotional distress; (4) which is severe. Hubbard v. UPI, 330 N.W.2d 428, 438-39 (Minn. 1983). The

Minnesota Supreme Court has emphasized the "high threshold standard of proof required of a complainant before a case may be submitted to the jury," and that the conduct must be "extreme and outrageous," and "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Id.

The facts of this case suggest a level of emotional distress even less than that inflicted in other Minnesota cases where the claim for emotional distress was held not to be extreme and outrageous. For example, in Jensen v. Walsh, 609 N.W.2d 251 (Minn. Ct. App. 2000), summary judgment was granted to the defendant on an emotional distress claim where the defendant was alleged to have sprayed obscenities on the plaintiff's garage, thrown eggs at the plaintiff's property, punctured plaintiff's automobile tires, and performed acts of witchcraft. Certainly the action taken in this case, namely an attempt to recover attorneys' fees for perceived unnecessary legal expenses, does not rise to the level of the actions in Jensen.

Accordingly, the emotional distress claim against Defendants must be dismissed.

**10. Plaintiff Is Not Entitled to Punitive Damages**

As none of Plaintiff's claims survive, her claim for punitive damages is moot. See M.H. v. Caritas Family Services, 475 N.W.2d 94 (Minn. Ct. App. 1991) (punitive damages can only be recovered where Plaintiff has a viable claim asserting an intentional tort).

**F. Plaintiff Is Not Entitled to Default Judgment**

Plaintiff has also moved for default judgment against Defendant Attorneys and Defendant Galvin. Plaintiff's argument hinges on the contention that the Motions to Dismiss filed by Defendant Attorneys and Defendant Galvin were not timely filed under Rule 4 of the Federal Rules of Civil Procedure or Local Rule 7.1(b), subsections 1 and 2, governing the filing of

dispositive motion papers in pro se and represented proceedings. Analysis of these rules demonstrates that the Motions to Dismiss were timely filed.

**1. Defendant Attorneys' Motion to Dismiss Was Timely Filed**

Rule 4(d)(3) of the Federal Rules of Civil Procedure provides that:

> A defendant that, before being served with process, timely returns a waiver so requested is not required to serve an answer to the complaint until 60 days after the date on which the request for waiver of service was sent, or 90 days after that date if the defendant was addressed outside any judicial district of the United States.

In addition, Fed.R.Civ.P. 12(a) provides that an answer or a motion to dismiss must be served within 60 days after a timely waiver under Rule 4(d). By executing a waiver of service no earlier than July 24, 2000, Defendant Attorneys had 60 days from that date to file an Answer or a Motion to Dismiss the Complaint. Defendant Attorneys then served their Rule 12 Motion on Plaintiff on September 22, 2000, within the sixty day deadline. Accordingly, default judgment need not be entered for failure of Defendant Attorneys to timely respond to the Complaint.

Even accepting that she was served on September 22, 2000, Plaintiff alleges that she is still entitled to default judgment because Defendant Attorneys should have proceeded under Local Rule 7.1(b)(1), which sets the briefing schedule for dispositive motions when one of the parties is proceeding pro se, and in this case requires that Defendant Attorneys' Motion be filed with the Court rather than served on Plaintiff:

> (A) Moving Party; Supporting Documents; Time Limits. No motion shall be heard by a district judge unless the moving party files pursuant to LR 5.2 and serves the following documents at least 28 days prior to the hearing:
>
> 1. Notice of Motion
> 2. Motion
> 3. Proposed Order
> 4. Affidavits and Exhibits

5. Memorandum of Law

Plaintiff's argument that the Rule 12 Motion should have been filed with the Court rather than served on her is a triumph of form over substance. Defendant Attorneys served Plaintiff instead of filing because they assumed that this proceeding would go forward under Local Rule 7.1(b)(2), which sets the briefing schedule for represented parties. Given that Plaintiff is an attorney, this assumption was entirely reasonable. Furthermore, even if Plaintiff was somehow prejudiced by Defendant Attorneys' decision to serve her rather than file the motion with the Court, the prejudice was fleeting, as the Motion to Dismiss was filed with the Court on October 18, 2000.

Plaintiff also alleges that she is entitled to default judgment because Defendant Attorneys did not file copies of the service letter which accompanied the service of their September 22, 2000, Motion with the Court until October 3, 2000. Local Rule 7.1(b)(2) requires that copies of the service letter be filed with the Court at the time the Motion is served. This argument, like its predecessor, hinges on a technicality. Plaintiff was in no way prejudiced by Defendant Attorneys' failure to file a copy of their service letter until October 3, 2000.

To enter default judgment in Plaintiff's behalf because of these alleged errors would be a miscarriage of justice. Rather, the Motion to Extend Time to File Motion to Dismiss [#56], which was filed by Defendant Attorneys after the timeliness issue was raised, should be granted to the extent that the deadline by which the Motion to Dismiss must have been filed is extended to October 3, 2000, the date that copies of the service letter were filed with the Court.

**2. Defendant Galvin's Motion to Dismiss Was Timely Filed Under Rule 4**

Plaintiff also moves for default judgment against Defendant Galvin as a result of technical errors in filing dispositive motion papers. Like Defendant Attorneys, Defendant Galvin attempted

to apply Local Rule 7.1(b)(2) to his Motion to Dismiss. Under that Rule, he served Plaintiff with the Motion to Dismiss on July 26, 2000, within the sixty day window, and served the accompanying papers on September 5, 2000. Defendant Galvin then learned that Plaintiff intended to proceed under Local Rule 7.1(b)(1) and refiled his Motion under that Rule.

Defendant Galvin did not err in his efforts to correctly file his Motion to Dismiss. Indeed, his action in withdrawing his original Motion to Dismiss and refiling so as to comply with the restrictions of Local Rule 7.1(b)(1) was done at the request of the Court. The only action by Defendant Galvin that is worthy of discussion is the delay between the service of the Motion to Dismiss and the service of the papers accompanying that Motion.

It is unclear whether the Federal Rules contemplate such a delay. The Advisory Committee notes to Local Rule 7.1(b)(2) provide only passing assistance in determining this issue. In particular, the 1999 Advisory Committee's Note provides that:

> **Supporting Affidavits.** Rule 7.1(b)(2) specifically contemplates that the factual basis for a dispositive motion will be established with affidavits and exhibits served and filed in conjunction with the initial motion and the responding party's memorandum of law. Although the rule makes provision for a Reply Memorandum, it neither permits nor prohibits the moving party from filing affidavits or other factual material therewith. The rule contemplates that the discovery record will allow the initial summary judgment submission to anticipate and address the responding party's factual claims. Reply affidavits are appropriate only when necessary to address factual claims of the responding party that were not reasonably anticipated. It is improper to withhold information–either from discovery or from initial moving papers–in order to gain an advantage.

The Advisory Committee Notes to other Federal Rules of Civil Procedure and Local Rules are of no assistance in evaluating this issue.

While it seems likely that the Rules do not contemplate lengthy delays between the filing of

a Rule 12 Motion and the service of accompanying documentation, the Court could find no authority for the proposition that such conduct, which is technically permitted by the Rules, should in any way be sanctioned.

**3. Lack of Prejudice to Plaintiff**

Permitting Defendant Galvin's Motion to be heard is further warranted by the fact that both Motions to Dismiss are fully briefed, heard, and ready for adjudication. No conceivable prejudice attaches to Plaintiff if default judgment is not entered in her behalf except for a small delay in the determination of the Court's ultimate decision.

Accordingly, default judgment should not be entered on behalf of Plaintiff against either Defendant Attorneys or Defendant Galvin.

## III. RECOMMENDATION

Based upon the files, records, and proceedings herein, it is hereby **RECOMMENDED** that:

1. Defendants Sutherland, Metzen, and the State of Minnesota's Motion to Dismiss and/or for Summary Judgment [#5] be **GRANTED**;
2. Defendant Galvin's Motion to Dismiss for Lack of Subject Matter Jurisdiction [#12] be **DENIED AS MOOT**;
3. Defendant Galvin's Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted [#23] be **DENIED**;
4. Defendant Attorneys and Defendant Law Firm's Motion to Dismiss and/or for Summary Judgment [#30] be **GRANTED**;
5. Dakota County's Motion to Dismiss [#32] be **GRANTED**;

6. Plaintiff's Motion for Entry of Default Judgment Against Defendant Attorney and Defendant Law Firms [#41] be **DENIED**;

7. Plaintiff's Motion for Entry of Default Judgment Against Defendant Galvin [#43] be **DENIED**;

8. Defendant Attorneys' Motion to Extend Time to File Motion to Dismiss [#56] is **GRANTED**.

DATED: February 15, 2001

FRANKLIN L. NOEL
Chief Magistrate Judge

Pursuant to Local Rule 72.1(c)(2), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, within ten days of service of this Report and Recommendation, written objections which specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within ten days after service thereof. All briefs filed under this rule shall be limited to ten pages. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Circuit Court of Appeals.